# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Kevin Alexander Wilson<br>4707 Tamworth Court<br>Temple Hills, Maryland 20748-5233<br><br>Plaintiff<br><br>v.<br><br>Federal Express Corp.<br>The Corporation Trust Company<br>(Registered Agent)<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>And<br><br>John O'Reilly, Manager<br>Federal Express Corp.<br>DCAA Station<br>1501 Eckington Place NE<br>Washington DC 20002<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ |

## COMPLAINT

Plaintiff Kevin Alexander Wilson, a black African American male, ("Mr.

Wilson/Plaintiff"), by his undersigned Counsel make this complaint against his former

employer, Federal Express Corporation ("FedEx"), and his former manager/supervisor

John O'Reilly ("Mr. O'Reilly"), collectively ("Defendants").

**INTRODUCTION**

1.      This is a civil action for injuries that Plaintiff Mr. Wilson sustained as a result of Defendants FedEx and Mr. O'Reilly's wrongful termination of his employment without just cause, in breach of their implied contract/policy with Plaintiff.

2.      Plaintiff claims discrimination in the making and enforcement of their employment contract pursuant to 42 U.S.C. §1981. Plaintiff also claims breach of implied contract, breach of implied good faith dealing in contract, defamation, and Negligence pursuant to § 35-301, Liability of common carriers for injuries to employees. in violation of the laws of the District of Columbia.

**JURISDICTION AND VENUE**

3.      This is a civil action arising under the laws of the United States. This Court has Jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events giving rise to Plaintiff's' claim occurred in the District of Columbia.

## PARTIES

**Plaintiffs**

5.      Mr. Kevin Wilson is a Black, African American man, and a resident of Maryland.

Mr. Wilson started working for Federal Express on November 4, 2004 as a part-time p.m.

Courier, in Washington D.C. Mr. Wilson later became a full-time "Swing Driver" in

2009, and continued in that capacity until he was terminated by Defendants on August

29, 2017.

**Defendants**

6.      Federal Express Corporation aka FedEx Express, is an incorporated entity.

Incorporated in the state of Delaware and registered to do business in the District of

Columbia, with an office located at 1501 Eckington Place NE, Washington DC 20002.

7.      Mr. O'Reilly is FedEx Station Operations Manager at the DCAA station, 1501

Eckington Place NE, Washington DC 20002.

**FACTS**

8.        Mr. O'Reilly was Mr. Wilson's direct supervisor. Mr. O'Reilly played individual

and active role in Plaintiff's termination. Mr. O'Reilly suspended, and eventually

terminated Mr. Wilson. It was on the basis of Mr. O'Reilly's decision and advice and

recommendation to FedEx Management that Mr. Wilson, ultimately was terminated.


9.        Mr. O'Reilly was not physically present when, and at the location and time Mr.

Wilson found out that a package was missing, and when he immediately reported that

information to Mr. O'Reilly. Mr. Wilson reported his missing package to Mr. O'Reilly

over the phone. Later Mr. O'Reilly terminated Mr. Wilson. Mr. O'Reilly also informed

Mr. Wilson that the rationale he provided his Managing Director Kenneth C. Wilson for

terminating Plaintiff, was that he "lost custodial control of a high value customer

shipment (Verizon Cell Phone)… in violation of Policy P2-5 (Acceptable Conduct)."


10.        Mr. O'Reilly is a Supervisor, who had the power and authority to recommend the

hiring, and termination of employees, and specifically in this case, the termination of Mr.

Wilson. However, Mr. O'Reilly abused that power intentionally and unlawfully, in

retaliation of Plaintiff, because he was not happy with the SFA evaluation Plaintiff gave

him. Mr. O'Reilly's Managing Director, Mr. Kenneth C. Wilson had told Plaintiff and

about ten other employees who were going to evaluate managers, "to look after John

*(O'Reilly)* at their SFA." (Emphasis added). Although Mr. Kevin Wilson believed he

gave Mr. O'Reilly a "fair" evaluation, apparently, it was not good enough for Joh

O'Reilly and as such he punished Plaintiff for not "looking after" him.

11.     Unfortunately, this abuse of the SFA evaluation that is supposed to be

independent and anonymous, has been ongoing thing, whereby drivers were intimidated

and coerced to give Mr. O'Reilly a good review, and for some reason, a little after, there

will be a truck issue and they will be terminated without more. This was Mr. Cain's

experience too. Prior to completing his SFA managers' survey, Mr. O'Reilly asked Mr.

Cain to give him a good review – "can you give me a good review, you know I have been

good to you." Apparently Mr. O'Reilly made the same request also to another employee

who shared his experience with Mr. Cain, and Mr. Cain told that other employee that Mr.

O'Reilly had asked him to do the same. Apparently, Mr. O'Reilly felt that Mr. Cain did

not give him a good review, and so, he abused his power as Mr. Cain's supervisor and

terminated him. The same scenario is being repeated with Mr. Wilson. FedEx is well

aware of this practice and has done nothing about it.

12.     FedEx policy says that the SFA evaluation is meant to be anonymous and also

confidential. However, in reality there is nothing anonymous about the process or

confidential. The process is also tainted with intimidation and coercion which renders is

unfair and irrelevant, as it has been used as a tool against any employee who dare to

evaluate their managers truthfully the way they perceive them even if that evaluation is

negative.

13.     The SFA evaluation was conducted on or about April, 2017, on August 9, 2017, a package mysteriously got missing from Mr. Wilson's truck #232675. Plaintiff immediately notified Mr. O'Reilly and gave him a written detail of what happened. The next day, August 10, 2017 he was interviewed by the station in-house security representative, named "Buck" who recorded Plaintiff's answers (Plaintiff was not shown or given a transcribed copy of his recorded answers to review, confirm and sign, and he was never given any such copy to Plaintiff to-date). After the interview, he was suspended with pay. **See Exhibit A**. Subsequently, Plaintiff was terminated on August 29, 2017. **See Exhibit B.**

14.     Mr. O'Reilly's advice and recommendation to the decision makers was based on his personal hate and invidious discriminatory animus towards Plaintiff based on his race, because given the circumstances, if Mr. Wilson was a white man, he certainly would not have been terminated.

15.     Mr. O'Reilly has been the front-line Operations Manager in Washington D.C., since about June, 2015. He became FedEx Operations Manager and the supervisor of many Black African American Drivers at the District of Columbia Depo and office located at 1501 Eckington Place NE, Washington DC 20002, in November 2015. Since then.

16.     Since becoming the Operations Manager at the 1501 Eckington Place NE, Washington DC, depo, Mr. O'Reilly has terminated over eight FedEx drivers, all black men, for the same unclear, undefined reason (loss of custodial property), under dubious and unwarranted circumstances (without proof of any wrongdoing). To name a few, Mr. O'Reilly terminated Mr. Kevin Wilson, Mr. Mike Myers, Mr. Small, Ms. Gresholm, Mr. Roland Williams, Mr. Alfred Howard, and Mr. Hakiem Cain.  (Ms. Gresholm and Mr. Roland Williams were terminated on the same day October 5, 2017. Mr. O'Reilly terminated Mr. Alfred Howard, who had worked for FedEx since October 27, 1997 as a full-time Courier, on December 23, 2015 within a little over six (6) months of him becoming the operations manager at Eckington Place, and barely one (1) month of him becoming Mr. Howard's supervisor. Mr. O'Reilly terminated Mr. Cain, who had worked for FedEx since 2008, on June 24, 2016 - barely five (5) months of him becoming Mr. Cain's supervisor. Mr. Howard and Mr. Cain's wrongful termination suit against Defendants in this DC District Court, is presently ongoing.

17.     Mr. Kevin Wilson started working for FedEx on November 4, 2004 as a part-time p.m. Courier, in Washington D.C. In 2009, Plaintiff became a full-time "Swing Driver", and continued in that capacity until he was terminated by Defendants on August 29, 2017.

18.     On Wednesday, August 9, 2017, while assigned to Route 535, and driving truck #

232675, Plaintiff noticed a package in his truck with a very noticeable hole in it that was

not present before it was placed on the shelf in the cargo area of the vehicle. He

immediately notified FedEx management by calling his supervisor John O'Reilly telling

him of the hole in the package. In response, Mr. O'Reilly advised Mr. Wilson that: "as

long as nothing was missing he was not alarmed and to continue driving." Plaintiff

replied that he was not sure if anything was missing from the package with a whole, but

he followed Mr. O'Reilly's directive and kept driving.


19.     The package with the hole in it was delivered to the owner Verizon Wireless. A

Verizon employee accepted the package and after examination of the package, the

employee confirmed that all items shipped in that package with a hole that Plaintiff saw

that he reported to John O'Reilly, had all shipped items intact in the box, so nothing was

missing. Plaintiff continued his delivery.


20.     On the same day, at the last building Mr. Wilson serviced, he discovered that a

package was missing. Again, he immediately notified Mr. O'Reilly, who in turn asked

Plaintiff to the station and submit a statement describing what happened. Mr. Wilson

returned to the station, and reiterated to Mr. O'Reilly what he had told him over the

phone, (1) about the first package with a big whole which was not there at the time it was

originally loaded into the truck, but had nothing missing in it, and (2) how he found out at

his last service stop, that a package was missing, and that he had no knowledge of how the missing package got missing, and had nothing to do with it being missing.

21      The next day, August 10, 2017, Plaintiff was interviewed by an internal office security representative of FedEx named "Buck" William. He was told that Buck was filling in for Mr. Marcus, who prior to then, had been the regular security person at the station who conducted such interviews. However, upon information, Mr. Marcus no longer works at the station. During the interview, Mr. Wilson gave Buck William the same account of what happened, that he had already given to Mr. O'Reilly.

22.      Subsequently, on August 29, 2017, before any real, thorough or fair investigation, as it is FedEx' method of operation and policy, Mr. John O'Reilly and FedEx terminated Mr. Wilson without any evidence or finding that he was in any way shape of form, responsible or involved in the loss of the package, or that he has any inkling or knowledge about how that package was taken from his truck while he was temporarily away from his truck making delivery.

23.      The circumstances surrounding Mr. Wilson's termination is very similar to that of several FedEx couriers/drivers who were terminated for the same reason – "loss of custodial control." Also, common to the vehicles involved like Mr. Wilson's truck, and that of other drivers who were terminated under similar circumstances and for the same

reasons, is that the delivery trucks they used, that was compromised while unattended, because the drivers where making deliveries inside buildings, all had "Wristband" key mechanism, that drivers use to open and lock their delivery trucks.

24.     FedEx is aware that Mr. O'Reilly is known as someone who has racist tendencies and hatred toward minorities, and still allows him to terminate its black drivers at his whim, without more. For example, Mr. O'Reilly once told Mr. Howard, while a certain music was playing from the radio station, while both were standing by the conveyor belt that was bringing up packages which Mr. Howard was loading, that that music reminded him (O'Reilly), of the time when he and his friends back home, used to beat up Jewish boys and pull them by their burns "yea man we used to beat those little Jewish boys (young Hasidic Jews) back home and pull them by their burns", an assault, unlawful, and unconscionable act against others, based on nothing those "little Jewish boys back home" did wrong but being Jewish, and on his (O'Reilly's) intentional discriminatory animus towards minorities like those little Jewish boys, including African Americans like Mr. Wilson, who do not look or talk like him. (Mr. Howard recalled this fact, in his own Complaint).

25.     Mr. O'Reilly's racist and abusive treatment of minorities especially black drivers who worked for FedEx, continues and is also reflected in the way he terminated Mr. Wilson, like other black African American drivers, like Mr. Howard and Mr. Cain, who

he recklessly, unfairly and unwarrantedly terminated, just because he can. Mr. O'Reilly

abused, and used the power of his position, by hiding behind FedEx' oppressive, and

unconscionable policies to carry out his general animus towards minorities, whenever he

wants, and because he knows that FedEx's supposed "Guaranteed Fair Treatment

Process" ("GFTP"), or investigative process is nothing but a sham, a cover up that masks

the fact that over 90% of black drivers who were terminated under the boilerplate " loss

of custodial property pursuant to Acceptable Conduct Policy (P2-5) of the Peoples

Manual" were already preordained for termination and in no way had anything to do with

the missing packages which Defendants know were stolen by third parties, unknown to

the drivers they have terminated, like Mr. Wilson.


26.     Mr. O'Reilly's discriminatory animus and hostile treatment of black employees of

FedEx, was also reflected on how he spoke to and treated Mr. Cain close to the time he

terminated Mr. Cain, for the same reason, and under similar circumstances. To catch up

with a very fast moving package conveyor, Mr. Cain would stop the conveyor, take off

the packages and load them, and then start the conveyor again. When Mr. O'Reilly saw

this, he came to Mr. Cain and yelled at him "don't you f****** do that again." After that,

Mr. Cain who is also a black man, called Mr. O'Reilly aside, and warned him not to ever

address him that way again, because he was a grown man and that he (O'Reilly), has no

right to speak to him like that (a fact Mr. Cain recalled, in his own Complaint).

27.     On February 26, 2016, Mr. Randy Baldwin's truck #231728 (the same truck used

by Mr. Howard and Mr. Cain), was compromised and customers' properties were stolen.

Mr. Baldwin was never disciplined. He was never suspended or terminated, and is still

employed by Defendants to-date. On or about March 15, Mr. Glenis Cole's truck (same

truck #231728) was comprised and customers' properties were stolen. Mr. Glenis Cole

was never disciplined. He was never suspended or terminated, and is still employed by

Defendants to-date. Sometime between September and November 2016, Mr. James

Snyder's truck #230375, was compromised and customers' properties were stolen just

like customers' properties were stolen from Mr. Wilson's truck. Mr. Snyder was

suspended but was later brought back, and is still employed by FedEx. Even though

Randy Baldwin, Glenis Cole, and James Snyder were in the "same boat" – their trucks

were compromised as Plaintiff's truck, in a similar manner and under same circumstances

on the delivery route, those three men were not disciplined or terminated as Plaintiff was.

Mr. O'Reilly was also their supervisor, and had the same authority to terminate them as

he has for terminating Plaintiffs. But he never terminated them. Because Mr. O'Reilly's

treatment of Mr. Wilson was different from the treatment he gave to Randy Baldwin,

Glenis Cole, and James Snyder, that amounted to intentional racial discrimination, in

violation of § 1981 because Plaintiff is African American.


28.     Mr. O'Reilly caused the termination of Plaintiff, by intentionally recommending

that Plaintiffs be terminated, based on his personal invidious discriminatory animus, and

hatred of them because of their race, and implicitly to punish or retaliate against Mr.

Wilson because he felt he did not give him a good evaluation.

29.     Because Mr. O'Reilly's discriminatory animus towards Mr. Wilson, is the "but

for" reason for Mr. O'Reilly's advice and recommendation to the decision makers who

authorized and or approved the termination of Mr. Wilson, Mr. O'Reilly is individually

responsible and as such liable to Mr. Wilson in damages for his role in his wrongful

termination.

30.     Mr. Wilson (and several other employees), were terminated when FedEx'

knowingly put into service/on the road, trucks with unsecure lock systems, including Mr.

Wilson's truck # 232675, that made it easy for third parties to break into, and steal

customers' packages, after drivers have locked and left their trucks to deliver packages,

without making it obvious, noticeable or apparent that the truck has been compromised.

31.     At the time of the incidents that resulted in Plaintiff's termination, it is common

knowledge at the station that the wristband master keys to the trucks had been missing for

a while, and Defendants and their management knew of the missing master key- the

wristband swipe master key overrides the locks on the trucks, including Plaintiff's, which

Defendants assigned to Plaintiff to use for his delivery on the day the package was stolen

from his truck. Defendants knowingly put Plaintiff's truck in service despite the fact that

trucks with wristband keys are constantly compromised, while drivers are making

delivery, and packages stolen by third parties unknown to the drivers.


32.     During the first step of the FGTP process, Mr. Wilson was asked on FedEx form

to "Explain Why You Feel Management Was Unfair. Part of the information he gave

FedEx management on page 4 of "STEP 1 GFTP FORM (**See Exhibit C**), contained

the following:

> "Considering the fact that there have been a number of documented thefts
> on the route in question (535), using the same Wristband vehicle (truck
> #232675) within a short period of time, there has to be the possibility of
> someone outside of the company with access to this vehicle (as well as
> others) taken into account. For the courier to be cited for "Loss of
> Custodial Control" without every stone being overturned, especially when
> there is no history of this, *termination* is a travesty and should be a last
> resort resolution not the status quo." (Emphasis added).


33.     As part of the GFTP process, Mr. Wilson was asked on FedEx form to list

additional information. Part of the information he gave FedEx management on page 3

of "STEP 2 GFTP FORM (**See Exhibit D),** contained the following:

> "What was not discussed during my GFT Level One, is that the vehicle
> used on Route 535 on 8/9/17, is o longer assigned to the Route and has
> been replaced with a New Truck. Clearly this indicates that there is some
> concern over whether or not the vehicle (232675) can be completely
> secured to the best of the driver's ability without the possibility of
> someone else having access while the vehicle is unattended."


33.     FedEx has an unfair and unconscionable termination process that is egregiously

one sided, which it has deliberately and painstakingly constructed, to allow it to

scapegoat its employees by terminating them when it blunders, and then hide behind the

curtain of the doctrine of at-will employment. FedEx uses its phony guise and elaborate process called Guaranteed Fair Treatment Process, (which is in no way fair or guaranteed), that is intended to shield it from the worst kind of maltreatment and abuse of its employees, while looking as if there is anything in there for the benefit of its employees, when in fact there is nothing there for the employees, but all for FedEx. This scorch earth operational policy is so cruel and consumer unfriendly and one that should be seriously looked into, because of the enormous damage and destruction it is causing to its innocent drivers like Mr. Wilson, some of whom have put in many years of loyal and dedicated service, and their families, who are mostly black, poor and mostly uneducated.

34.     FedEx has a very unfair policy that gives no room for fairness, objectivity or truth, to its employees, before terminating them – FedEx terminates its employees, before investigating whether there was any basis for terminating an employee. And when the investigation is supposed to be done, through the GFTP process, it turns out the process is nothing but rubber stamping the initial decision made by the supervisor without any real investigation, let alone an adequate and fair one.

35.     As Mr. Wilson and other employees who of FedEx who have suffered same fate have found out, the GFTP is nothing but a mere "going through the motion" because invariably, the decision to terminate had already been ordained, but the unfortunate employee like Mr. Wilson may not know it, until the termination. For example, on the day of his GFTP Step 1 hearing, September 21, 2017, over a month after his termination,

Mr. Wilson was instructed by FedEx management to ensure that he arrives for the meeting, 15 minutes ahead, and meet first with the Human Resources person Mr. Mike Gorman. He did. During his meeting with Mr. Gorman, the first thing he told Mr. Wilson was that he need not worry because his pension/401k was his. This information was given to Mr. Wilson before he met with his supervisor Mr. O'Reilly, Mr. Kenneth Wilson, his station managing director, Mr. Waytovich, Mr. O'Reilly's direct boss, and Mr. Gorman.

36.     Again as part of the FGTP process "STEP 3 GFTP FORM, Mr. Wilson was asked on FedEx form to "Provide Additional Information." Part of the information he gave FedEx management (**See Exhibit E**), contained the following:

> "The letter received giving Samuel L. Nesbit, Jr.'s decision to uphold Management's resolution to issue a termination letter includes a date of termination, July 31st, 2017, which happens to be incorrect (copy enclosed). So, was Mr. Nesbit's ruling based on evidence pertaining to another employee's GFTP or mine? Based on a comment made by Mike Gorman, regarding my pension/401 K being mine, prior to my GFTP step 1, the decision to end my employment with FedEx permanently was made by management even before I had a chance to give my account of what happened on August 9th, 2017."

37.     FedEx has failed to handle the issues surrounding its perennial and constant loss of its customers' packages that has nothing to do with drivers.  Because the losses has continued unabated even as different drivers are terminated, shows that something other than the poor innocent drivers are responsible. Instead of doing a serious, effective and thorough investigation of the root cause of these incidents, and capture the real perpetrators, FedEx does nothing other than take the convenient route of discarding its

drivers as if they are garbage, without any care about their rights. Mr. Wilson and the rest

of his colleagues who were terminated on same basis, never had custody or control of the

missing master key. The custodian of all the keys including but not limited to duplicate

keys and master keys at all the relevant times, had been Mr. Glen Booker ("Mr.

Booker").

38.     As a FedEx driver, Mr. Wilson's daily starting work routine was to clock in, go to

the "gatekeeper" - person responsible for equipment like scanners and keys etc. Then

Plaintiffs will give the gatekeeper the number of their truck, and the gatekeeper will give

them their keys. At the end of the day when Plaintiff have completed his work for the

day, he will go back to the gatekeeper and hand in all the equipment, including his keys.

Plaintiff is not allowed to go home with his keys and he never went home with it or any

of their work equipment.

39.     During all relevant times, Mr. Booker had control of all FedEx trucks keys in the

FedEx depot where Plaintiffs worked.

40.     To Mr. Wilson's knowledge, up-to-the date of his terminations, and to-date, the

missing master keys for the wristband trucks, has not been found or accounted for, by the

Defendants and or the keys custodian Mr. Booker.

41.     To Plaintiff's knowledge, to-date, Mr. Booker, who was responsible for all the keys, including but not limited to the master key that was missing, has not been disciplined or terminated, and he is still the custodian of the keys.

42.     Mr. Booker's responsibilities/duties includes taking inventory. As part of the inventory system, Mr. Booker had knowledge about every package or thing, that goes into assigned trucks at any given time, and the trucks' delivery routes.

43.     Mr. Willis was given, and asked to use the tuck # 232675, which had an unsecure lock system for his deliveries. The truck was compromised and customers' packages were stolen by unknown third party or parties.

44.     Since 2014 to the present FedEx delivery tucks' security locks have been compromised, trucks broken into and customers' packages stolen. Since then, there has been probably close to twenty (20) separate occasions when this has happened while different drivers were on their delivery routes. Recently this has also happened at another FedEx station – FedEx Ship Center (GAI), at 7331 Calhoun Place, Rockville, MD 20855. FedEx has a serious security breach issue, and instead of doing something about it, it has negligently ignored the problem, and has focused on the easy way out – terminating innocent drivers and in so doing defame them and tarnish their character and reputation by slander per se, and by innuendo, because it is enormously powerful than they are.

45.     For example, Eight (8) out of the eleven (11) times, when FedEx delivery trucks were compromised and customers' properties stolen, truck #231728, was the truck broken into – same truck Mr. Howard, Mr. Cain and three other drivers used, that was compromised and customers' property taken by unknown third-parties, and for which they were terminated.  The other three instances happened with different trucks, but with same wristband driver keys as truck #231728, including Mr. Wilson's truck.

46.     On or about December, 2014, Mr. Andre Johnson's truck was compromised and customers' properties were stolen, and as a result, Mr. Johnson was later terminated about January 20, 2014.

47.     Sometime in April, 2015, Mr. Harold Jackson's truck was compromised and customers' properties were stolen. Consequently, Mr. Jackson was terminated on or about June 4, 2014.

48.     On September 3, 2015, Mr. Howard's truck #231728 was compromised and customers' computers were stolen.

49.     On December 2, 2015, Mr. Howard's truck #231728 was again, compromised and customers' computers were stolen. Mr. Howard was terminated as a result.

50.     On February 26, 2016, Mr. Randy Baldwin's truck #231728 (the same truck used by Mr. Howard) was compromised and customers' properties were stolen. Mr. Baldwin was never disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

51.     On February 29, 2016, Mr. Cain's truck (same truck #231728), was compromised and customers' property was stolen.

52.     On March 7, 2016, Mr. Cain's truck (same truck #231728) was compromised again, and customers' property was stolen.

53.     On or about March 5, 2016, for the third time, Mr. Cain's truck (same truck #231728) was comprised and customers' properties were stolen. Consequently, Mr. Cain was suspended with pay, and later terminated. During these incidents, Defendants knew or should have known that something must be wrong with this particular truck and could have repaired it but they failed to do so.

54.     On or about March 15, Mr. Glenis Cole's truck (same truck #231728) was comprised and customers' properties were stolen. Mr.  Glenis Cole was never disciplined. He was never suspended or terminated, and is still employed by Defendants to-date.

55.     Sometime between September and November 2016, Mr. James Snyder's truck #230375, was compromised and customers' properties were stolen. Mr. Snyder was suspended but was later brought back, and is still employed by FedEx.

56.     On or about August, 3, 2016, Mr. Mike Myers's truck (#231728) that has been compromised by other drivers as stated above, was compromised and customers' properties were stolen. Consequently, Mr. Myers was terminated.

57.     On August, 29, 2017, Mr. Wilson's wristband key truck #232675 was compromised and customers' properties were stolen. Consequently, Mr. Wilson was terminated.

58.     On October 5, 2017, Ms. Lisa Gresholm, and Mr. Roland Williams trucks were compromised and customers' properties were stolen. Consequently, both drivers were also terminated.

59.     Common to all the above listed terminated drivers, is that they all worked from the same station in DC, they are all black, all men, except Lisa who is a woman. They all are also terminated on the basis of the vague and unexplained "loss of custodial property."  In the face of this overwhelming evidence based on these occurrences, and the fact that the same problem continues after drivers who it seems Defendant terminated because they played some kind or role in the disappearance of the packages, or even stole

them, Defendant had grossly neglected to do a serious investigation and stem this very vexing problem they have, instead of using their dedicated drivers as a mere disposables at its whim, and at all cost.

60.     Although the circumstances surrounding the break ins of the trucks operated by all employees mentioned herein, including Mr. Wilson, were eerily the same perhaps due to the fact that the trucks lock system was defective, in all relevant and material respects, Mr. Baldwin, and Mr. Glenis Cole were never disciplined. They were not terminated and both are still working for Defendants to-date. Also, although Mr. Snyder was suspended, later, he was reinstated.

61.     Common to all Defendants' trucks that was compromised since December 2014, is that they were all wristband lock system trucks. The driver wears a wristband programed security key system that is used to swipe open their trucks, when they want to open it. The vehicle is locked automatically by shutting the door.

62.     Also common to all drivers who have suffered same fate as Mr. Wilson, is that the relevant packages were all stolen when the drivers, including Mr. Wilson, packed their trucks, locked it, and went to deliver packages, and before they returned back to their trucks to continue to their next delivery.

63.     During his interviews with Mr. security officer and management, Mr. Wilson told Defendant that he has no knowledge of how his truck was broken into, had nothing to do with the missing packages, and or how the packages were stolen. He also told Defendants that he locked his truck at all times when he left the truck to deliver packages, and had nothing to do with the missing packages.

64.     However, despite no wrongdoing, and no evidence that Plaintiff did not lock his trucks, or was responsible for the missing packages, Mr. Wilson was terminated under Defendants' policy that impliedly states that employees like Plaintiffs will be terminated only for cause, or in other words, if it was proven that they left their vehicle unsecured, and or was responsible for the theft of customers' properties in their custody.


65.     Mr. Wilson was wrongfully terminated for Defendant's own negligence in putting into service/on the road, wristband swipe opening device trucks that they knew or should have known, has defective lock system that was not reasonably apparent to Plaintiff at the relevant time when his truck was compromised.


66.     Plaintiff was also terminated under circumstances where there could certainly be other explanations as to how, and who was breaking into the trucks at the same station, including Mr. Wilsons truck, and given the fact that the master key to wristband trucks like his, that could open the truck at any time, was missing, and had not been accounted for, by the custodian, or Defendant.

67.     Defendants' policy handbook and manual also provide for a "Guaranteed Fair Treatment Procedure, P5-5 ("GFTP") – a progressive appeal process that Defendants' policy allows an employee to take, when they "in good faith believe this action to be unfair"- a suspension or termination. The GFTP obligates both employer and employee, to follow certain regimented procedures, like limitation on time periods, and manner the appeal must be made.

68.     Mr. Wilson was terminated in violation of this policy, because he was not given the benefit of contract/policy that FedEx by their own terms, promised to adhere to, in good faith.

69.     Although Mr. Wilson was suspended and terminated, both his suspension and termination letters, other than by defamatory innuendo, did not say he was responsible for the missing computers from his truck. Also, both his suspension and termination letters failed to spell out what "misconduct" Mr. Wilson committed and/or a causal link, if any, of such conduct, to the missing computers other than, that the packages were stolen from his parked truck (which he locked), in his absence, while he was delivering other packages.

70.     Mr. Wilson was terminated in breach of implied provisions of FedEx policy that termination would occur only for cause. He was not responsible for the missing packages from his truck but he was terminated in violation of that implied contract.

71.     Mr. Wilson was terminated in violation of this policy, because he was not given

the benefit of contract/policy that FedEx by their own terms, were to adhere to, in good

faith.


72.     Mr. Wilson was terminated in violation of 42 U.S.C. §1981, because his

termination amounted to discrimination in the making and enforcement of his

employment contract with FedEx.


73.     Mr. Wilson's termination was unlawful because it was Defendants' own

negligence, that caused Mr. Wilson's truck to be compromised, and thus, the proximate

cause of him suffer property injury, - losing his employment.


74.     Mr. Wilson was defamed, by his termination, by slander per se, and innuendo,

because a reasonable person would believe that because he was terminated, he stole the

computers missing from his truck on two occasions, even though Defendants had no

evidence that he had anything to do with it, and it was an imputation on his ability to do

his job well, honestly and with integrity.


75.     Mr. Wilson was also terminated in violation of public policy, because, theft is a

crime, is unlawful and against public policy to accuse an individual of theft, punish that

individual with any proof whatsoever, and under circumstances that no reasonable and

fair employer could have terminated Messrs. Howard and Cain, because it was clear that

they were not responsible for the missing customers' packages, and if anything, it was

due to Defendants' own reckless and negligent omission in not taking the trucks

concerned out of service, until their lock system has been changed. And for a stronger

reason, since the missing keys have not been found and it was apparent that some third

party(ies) who have them, and knows the routes the trucks were taking, other than

Plaintiff, had been using the missing keys, to gain access into the affected trucks.


76.     Because Defendant wrongfully terminated Mr. Cain, and Mr. Howard,

Defendants' are liable to both Plaintiff for compensatory and punitive damages.


## COUNT I
### (Racial/Intentional Discrimination) in the Making and
### Enforcement of Contracts in Violation of 42 U.S.C. §1981

77.     Paragraphs 1 through 76 above, are incorporated herein by reference and made
part of this paragraph.


78.     Mr. Wilson is a b lack African American male. At the time of the incidents that

resulted in Plaintiffs' termination, the master key which overrides the locks on his

truck, when unascertained third parties broke into it and stole packages, had been

missing for a while, and Defendants and their management were aware of that fact.

Mr. Wilson but Mr. Glen Booker did. At all relevant times, Mr. Booker had control of

all FedEx trucks keys in the FedEx depot where Plaintiff worked. Also, Mr. Booker's

responsibilities/duties includes taking inventory. As part of the inventory system, Mr. Booker had knowledge about every package or thing, that goes into assigned trucks at any given time, and the trucks' delivery routes. Yet he was never asked to account for the missing keys or disciplined.

79.    The fact that Mr. Booker has never been held accountable for the missing keys or asked to account for them, and punished like Plaintiff, and also the fact that Defendant sent Plaintiff out in a truck with a defective lock system, which jeopardized their ability to do their work as it left them open to the risk of being robbed, and when they were so robbed, terminated them without just cause amounts to discrimination in the enforcement of employment contract in violation of 42 U.S.C §1981.

80.    As a direct and proximate result of Defendant's intentional and unlawful discharge of Mr. Wilson he suffered and continue to suffer, among other things, anger, loss of employment, lost earnings and benefits, severe humiliation, emotional pain, and suffering, and embarrassment. Consequently, Defendants are liable to Mr. Wilson in damages.

## Count II
### (Breach of the Duty of Good Faith and Fair Dealing)

81.    Paragraphs 1 through 80 above, are incorporated herein by reference and made part pf this paragraph.

82.   In *Draim v. Virtual Geosatellite Holdings, Inc.*, 631 F. Supp. 2d 32, 39 (D.D.C.

2009, this Court stated:

> Under the law of the District of Columbia, the mutual promise to employ
> and serve creates a contract terminable at the will of either party. Unless
> the parties agree to enter into a contract for a fixed duration or a written
> contract for permanent employment, the employee will be regarded as
> terminable at will. [Nonetheless,] every contract is deemed to contain an
> implied covenant of good faith and fair dealing that means that neither
> party shall do anything that would have the effect of destroying or
> injuring the right of the other party to receive the fruits of the contract.

83.   FedEx breached this implied covenant of good faith and fair dealing when it

terminated Plaintiff without just cause and without proof of any violation of policy or

wrong doing. The 2-5 People Manual 2-5 Acceptable Conduct and the FedEx Handbook

with its progressive discipline procedures implicitly if not expressly, states that in

essence, that an employee will be disciplined or terminated for cause – if they fall short

of "acceptable conduct".  Here, Mr. Wilson did no such thing. Plaintiff lost control

because FedEx put in service a defective truck, and asked him to drive that truck to

deliver customers' goods.


**COUNT III**
**Breach of Implied Contract Constituted in the People Manual**
**And the FedEx Handbook for Misconduct and Discipline**
**And Guaranteed Fair Treatment Procedure (GFTP)**

84.   Paragraphs 1 through 83 above, are incorporated herein by reference and made

part of this paragraph.

85.   FedEx' People Manual page 2, lists conducts that are classified as "misconduct".

Among other things listed, is, "custodial loss of company or customer property."


86.      Before listing the misconducts, the manual states:

> "FedEx Express requires a high degree of personal integrity and
> responsibility of its employees. Violations of Company or departmental
> rules may constitute    misconduct for which an employee may be
> immediately suspended with pay, pending a complete investigation. All
> alleged violations should be thoroughly investigated and documented.
> Disciplinary decisions should be based on a logical analysis of the
> evidence."

  Yet, there was no thorough or complete investigation that was carried out.

87.   Also, FedEx People Manual 5-5 Guaranteed Fair Treatment Procedure, provides:

"should you in good faith believe this action is unfair, you have the right to enter the

GFTP complaint process."


88.   Defendants actions amounts to a breach of the implied contract constituted in the

People Manual and the FedEx Handbook for Misconduct and Discipline, and Guaranteed

Fair Treatment Procedure with Plaintiff.


89.     As a direct and proximate result of FedEx breach of the implied contract, Mr.

Wilson suffered and continue to suffer, among other things, loss of employment, lost

earnings, and benefits, severe humiliation, emotional pain, suffering, and embarrassment.

Consequently, Defendant is liable to Mr. Wilson, in damages.

**COUNT IV - (Negligence)**

90.     Paragraphs 1 through 89 above, are incorporated herein by reference and made part of this paragraph.

91.   Defendants have a duty to provide Mr. Wilson with a secure truck to carry out his delivery duties. As his employer, it is Defendants duty to provide him with a safe, but not a defective equipment (truck with a defective door). By extension, it is Defendants duty to ensure that customers' packages are transported in a truck with a secure lock.

92.   FedEx breached that duty, when due to its own, and its agents' negligence, introduced wristband swipe opening device trucks with defective lock system, into service and obligated Plaintiff to drive it. Defendant knew or should have known that Mr. Wilson's truck was defective and as such, could be compromised.

93.     As a direct and proximate result of Defendant's breach, Mr. Wilson's suffered and continue to suffer, among other things, loss of employment, lost wages, and benefits, severe humiliation, emotional pain, suffering, and embarrassment. Consequently, Defendants are liable to Mr. Wilson, in damages, pursuant to D.C. Code §35-301. (Liability of common carriers for injuries to employees).

## COUNT V
### Defamation by Innuendo: Slander per Se
### (Or in the alternative, Slander)

94.    Paragraphs 1 through 93 above, are incorporated herein by reference and made part of this paragraph.

95.    Because Mr. Wilson was defamed, by his termination, by slander per se and innuendo, because a reasonable person would believe that because they were terminated, they must have been responsible or have stolen the computers missing from their truck on all the relevant occasions, even though this was completely false, and Defendants had no evidence whatsoever, that Plaintiffs had anything to do with the loss of the missing or stolen packages.

96.    As a consequence of Defendant's termination of Mr. Wilson, Defendant is liable to Mr. Wilson in damages for its defamation by slander per se, and libel by innuendo, of both Mr. Wilson.

97.    As a direct and proximate result of Defendant's termination and Defamation of Mr. Wilson, Defendant is liable to him in damages.

**WHEREFORE,** Plaintiffs Mr. Howard and Mr. Cain, respectfully requests that this Court:

(a)    Enter judgment on behalf of Mr. Wilson, against Defendants;

(b)     Declare that Defendants conduct is in violation of Section 1981

(c)     Declare that Defendants are liable to Mr. Wilson in damages on Count VI

(negligence), pursuant to D.C. Code §35-301.

(d)     Declare that there is an implied contract between Plaintiff and Defendants, and

that Defendants breached it;

(e)     Declare that Defendants breached their implied duty of good faith and fair

dealing;

(f)     Award Mr. Wilson back pay and front pay;

(g)     Award Mr. Wilson compensatory damages, including pain and suffering in the

amount of $2,000,000;

(h)     Award Mr. Wilson, punitive damages against Defendants in the amount of

$3,000,000;

(i)     Award Plaintiff's attorneys' fees, and costs, prejudgment and post-judgment

interest;

(j)     Grant such other relief as this Court deems just and proper.

.

## DEMAND FOR JURY TRIAL

TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY A JURY.


Respectfully submitted this 28th day of February, 2018


*/s/ Stephen Christopher Swift*
Stephen Christopher Swift
D.C. Bar No. 428459
Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000
Facsimile: (703) 535-8205
E-mail: steve@swift.law.pro


*Attorney for Plaintiff*
*Kevin Alexander Wilson*